UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASON D. CUNNINGHAM,<br><br>  Plaintiff,<br><br>  v.<br><br>NORM KRAMER, et al.,<br><br>  Defendants. | CASE NO. 1:15-cv-01362-AWI-MJS (PC)<br><br>**FINDINGS AND RECOMMENDATION TO DISMISS ACTION FOR FAILURE TO STATE A CLAIM**<br><br>**(ECF NO. 14)**<br><br>**FOURTEEN (14) DAY OBJECTION DEADLINE** |

Plaintiff is a civil detainee proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983.

On November 24, 2015, the Court dismissed Plaintiff's complaint for failure to state a claim but gave leave to amend. (ECF No. 9.) Plaintiff's first amended complaint is before the Court for screening.

**I.   Screening Requirement**

The in forma pauperis statute provides, "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. Pleading Standard

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

## III. Plaintiff's Allegations

Plaintiff is civilly detained at Coalinga State Hospital ("CSH") in Coalinga, California, where the acts alleged in his complaint occurred. He names Cliff Allenby, in his individual and official capacities, as the sole defendant. Allenby is the former Executive Director of the California Department of State Hospitals.

Plaintiff's allegations may be summarized essentially as follows.

Approximately one year after Plaintiff's arrival at CSH, he contracted coccidioidomycosis, also known as "Valley Fever."[1] As a result, Plaintiff was hospitalized and has suffered severe pain. Plaintiff is an African-American male. African-American males are at higher risk for the more serious form of Valley Fever that Plaintiff contracted.

Plaintiff claims that Defendant had knowledge of the dangers of Valley Fever as early as 2002 due to an outbreak at a neighboring facility, Pleasant Valley State Prison ("PVSP"). Nonetheless, Defendant allowed Plaintiff to be transferred to CSH and housed there without adequate precautions to prevent Valley Fever. Plaintiff believes that Defendant's deficient policies, practices, and customs are the cause of Valley Fever infections at CSH. These deficiencies also may expose Plaintiff and others to other, unspecified diseases and infections.

Plaintiff claims that Defendant's conduct violated his Fourteenth Amendment rights to Equal Protection and adequate medical care, unspecified rights under the Fourth Amendment, the Americans with Disabilities Act ("ADA"), and various provisions of state law. He seeks money damages and injunctive and declaratory relief.

**IV.  Analysis**

The essential allegations of Plaintiff's complaint are unchanged from his original complaint. Those allegations were found to be deficient in the Court's screening order (ECF No. 9), and in the order denying his motion for reconsideration (ECF No. 11). The Court will repeat herein the legal standards applicable to Plaintiff's claims.

    **A.  Fourteenth Amendment**

        **1.  Equal Protection**

The Equal Protection Clause requires that similarly situated persons be treated alike. City of Cleburne, Tex. v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). An equal protection claim may be established by showing that the defendant intentionally

---

[1] Although not stated in Plaintiff's first amended complaint, his original complaint stated that he had resided at CSH since 2010.

discriminated against the plaintiff based on the plaintiff's membership in a protected class, Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003), Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); see also Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiff's Equal Protection claim appears to be based on Defendant's alleged "callous and deliberate indifference to [Plaintiff's] African-American health." Plaintiff does not allege that Defendant treated Plaintiff differently from others who are similarly situated on the basis of Plaintiff's race. To the contrary, Plaintiff appears to allege that Defendant should have treated Plaintiff differently due to Plaintiff's race and the particular susceptibility of African-Americans to a specific form of Valley Fever. This allegation does not state an Equal Protection claim and instead is, and will be, more properly analyzed as a due process claim for conditions of confinement.

## 2. Conditions of Confinement

### a. Fourteenth Amendment Standard

The Fourteenth Amendment provides the standard for evaluating the constitutionally protected interests of individuals who have been involuntarily committed to a state facility. Rivera v. Rogers, 224 Fed. Appx. 148, 150–51 (3d Cir. 2007); see Youngberg v. Romeo, 457 U.S. 307, 312 (1982). Such individuals are "entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Youngberg, 457 U.S. at 321-22. In determining whether the constitutional rights of an involuntarily committed individual have been violated, the court must balance the individual's liberty interests against the relevant state interests, with deference shown to the judgment exercised by qualified professionals. Id. at 320-22.

A "decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." Id. at 322–23. The professional judgment standard is an objective standard and it equates "to that required in ordinary tort cases for a finding of conscious indifference amounting to gross negligence." Ammons v. Wash. Dep't of Soc. & Health Servs., 648 F.3d 1020, 1029 (9th Cir. 2011) (citations and emphasis omitted).

Plaintiff's allegations are sufficient at the screening stage to show that Defendant failed to exercise accepted professional judgment. According to Plaintiff, Defendant was in possession of scientific information indicating a higher than usual prevalence of Valley Fever at PVSP, an institution situated mere yards from CSH. Defendant also was aware of the particular susceptibility of African-American males. Defendant was in possession of this information for years prior to Plaintiff's transfer to CSH, yet nevertheless allowed Plaintiff to be housed there. Defendant made no efforts to protect Plaintiff from Valley Fever despite Plaintiff's particular susceptibility to a dangerous strain of the infection. As a result, Plaintiff in fact contracted a dangerous strain of Valley Fever.

These facts are sufficient to allege conscious indifference amounting to gross negligence. See Samuels v. Ahlin, 584 Fed. Appx. 636, 637 (9th Cir. Aug. 21, 2014) (finding cognizable claims at the screening stage where the civil detainee plaintiff who contracted Valley Fever "alleged that defendants knew of the life-threatening risk of building Coalinga State Hospital in a highly endemic area for valley fever, but nonetheless approved or failed to stop the facility's construction"); Sullivan v. Kramer, 609 Fed. Appx. 435 (9th Cir. June 22, 2015) (holding at screening that a civil detainee who was merely at a higher risk for contracting Valley Fever but who had not contracted it alleged an unsafe conditions claim premised on defendant Allenby's knowledge "of the life-threatening dangers of valley fever at the state hospital but failed to take any

preventative measures to protect Sullivan, and that the risk prevention techniques substantially departed from generally accepted standards").

Despite this conclusion, the Court nonetheless must, in deference to the holdings of the District Judge to whom this case is assigned, recommend dismissal of Plaintiff's Fourteenth Amendment medical care claim on the basis of qualified immunity.

### b.     Qualified Immunity Generally

The doctrine of qualified immunity protects government officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To determine if an official is entitled to qualified immunity the court uses a two part inquiry. Saucier v. Katz, 533 U.S. 194, 200 (2001). It determines if the facts as alleged state a violation of a constitutional right and if the right is clearly established so that a reasonable official would have known that his conduct was unlawful. Saucier, 533 U.S. at 200.

The district court is "permitted to exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236. The inquiry as to whether the right was clearly established is "solely a question of law for the judge." Dunn v. Castro, 621 F.3d 1196, 1199 (9th Cir. 2010) (quoting Tortu v. Las Vegas Metro. Police Dep't, 556 F.3d 1075, 1085 (9th Cir. 2009)). In deciding whether officials are entitled to qualified immunity, the court is to view the evidence in the light most favorable to the plaintiff and resolve all material disputes in the favor of the plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

Defendants cannot be held liable for a violation of a right that is not clearly established at the time the violation occurred. Brown v. Oregon Dep't of Corrections, 751 F.3d 983, 990 (9th Cir. 2014). It is the Plaintiff who bears the burden of demonstrating that the right was clearly established at the time that the defendants acted. May v.

1  Baldwin, 109 F.3d 557, 561 (9th Cir. 1997). A constitutional right is clearly established
2  when its contours are "sufficiently clear [so] that a reasonable official would understand
3  that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002). The
4  court is to look to the state of the law at the time the defendants acted to see if it gave
5  fair warning that the alleged conduct was unconstitutional.  Hope, 536 U.S. at 741. The
6  unlawfulness of the official's act must be apparent in light of the preexisting law. Id, at
7  739. The Supreme Court has emphasized that it is often difficult for an official to
8  determine how relevant legal doctrine will apply to the specific situation that is faced and
9  that is why qualified immunity protects "all but the plainly incompetent or those who
10 knowingly violate the law[.]" Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1049 (9th
11 Cir. 2002).

12         Qualified immunity shields an official from personal liability where he reasonably
13 believes that his conduct complies with the law. Pearson, 555 U.S. at 244. "'Qualified
14 immunity gives government officials breathing room to make reasonable but mistaken
15 judgments,' and 'protects all but the plainly incompetent or those who knowingly violate
16 the law.'" Stanton v. Sims, 134 S. Ct. 3, 5 (2013) (citations omitted). In determining
17 whether the defendant is entitled to qualified immunity, the court is to determine if "a
18 reasonable officer would have had fair notice that [the action] was unlawful, and that any
19 mistake to the contrary would have been unreasonable." Chappell v. Mandeville, 706
20 F.3d 1052, 1056-57 (9th Cir. 2013) (quoting Drummond ex rel. Drummond v. City of
21 Anaheim, 343 F.3d 1052, 1060-61 (9th Cir. 2003)).

22         In determining if the law is clearly established, the Court first looks to binding
23 precedent. Chappell, 706 F.3d at 1056. If there is none on point, the Court will then look
24 to other decisional law, including the law of other circuits and district courts. Id. at 1056;
25 Osolinski v. Kane, 92 F.3d 934, 936 (9th Cir. 1996).

26
27
28

### c. Clearly Established Right

The starting point in any qualified immunity analysis is defining the particular constitutional right at issue. The Supreme Court has repeatedly reminded us that we are not to define "clearly established" at a high level of generality. Ashcroft v. al-Kidd, 563 US 731, 741 (2011). To do so "would destroy 'the balance that our cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performing of their duties,' by making it impossible for officials 'reasonably [to] anticipate when their conduct may give rise to liability for damages.'" Anderson v. Creighton, 483 U.S. 635, 639 (1987) (internal citation omitted). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, … but it is to say that in light of pre-existing law the unlawfulness must be apparent." Id. at 640.

In those Valley Fever cases that have reached the question of qualified immunity, the constitutional right has been defined as an inmate's right to be free from exposure to the environmental toxin, coccidiomycosis. See, e.g., Jackson v. Brown ("Jackson I"), No. 1:13-cv-01055-LJO-SAB, 2015 WL 5522088 (E.D. Cal. Sept. 17, 2015), modified by Jackson v. Brown ("Jackson II"), 134 F. Supp. 3d 1237 (E.D. Cal. Sept. 28, 2015); Smith v. Schwarzenegger, Case No. 1:14-cv-60-LJO-SAB, 137 F. Supp. 3d 1233, 1243 (E.D. Cal. Oct. 7, 2015), appeal docketed Case No. 15-17155 (9th Cir. Oct. 29, 2015) (defining the right in the context of "an inmate's exposure to cocci while incarcerated"); Jackson II, 134 F. Supp. 3d at 1238 (same); Smith v. State of California, Case No. 1:13-cv-0869-AWI-SKO, 2016 WL 398766, at *3 (E.D. Cal. Feb. 2, 2016). (noting "the lack of authority delineating the contours of the rights of inmates vis-à-vis exposure to coccidiomycosis."). See also Hines v. Youssef, Case No. 1:13-cv-0357-AWI-JLT, 2015 WL 2385095, at *9 (E.D. Cal. May 19, 2015), appeal docketed, No. 15-16145 (9th Cir. June 8, 2015) ("[I]n the context of the application of criteria for exclusion from endorsement to prisons in the cocci hyper-endemic zone in 2008, the right to exclusion on account of any factors not

previously recommended by an authoritative source or ordered by the receiver prior to the time of endorsement was not clearly established.") Under this factually specific definition, there is no controlling authority regarding an inmate's right to be free of exposure to coccidiomycosis.

"[T]here has been longstanding disagreement among the judges of this district as to whether and under what circumstances inmates housed at prisons in the San Joaquin Valley, where Valley Fever is endemic, may state an Eighth Amendment claim for being exposed to Valley Fever spores while incarcerated." See Jackson II, 134 F. Supp. 3d at 1240 (citing Jones v. Hartley, Case No. 1:13-cv-1590-AWI-GSA, 2015 WL 1276708, at *2-3 (E.D. Cal. Mar. 19, 2015) (collecting cases)). Indeed, the undersigned has recently declined to identify the right at issue at such a heightened level of specificity, instead holding that a detainee has "a right to be free from exposure to an environmental hazard that poses an unreasonable risk of serious damage to his health whether because the levels of that environmental hazard are too high for anyone in Plaintiff's situation or because Plaintiff has a particular susceptibility to the hazard." Allen v. Kramer, No. 1:15-cv-01609-DAD-MJS (PC) (E.D. Cal. Aug. 17, 2016). The undersigned thus concluded that such a claim should be permitted to proceed past the screening stage. Id.

This case, however, is assigned to District Judge Anthony W. Ishii. Judge Ishii has held that the right at issue must be defined as the right to be free from exposure to the environmental toxin, coccidiomycosis. Smith, 2016 WL 398766, at *3; Hines, 2015 WL 2385095, at *9. As stated, there is no controlling authority regarding the right to be free of exposure to coccidiomycosis and this right therefore is not clearly established. Accordingly, in deference to the views of the assigned District Judge, the Court must recommend dismissal of Plaintiff's conditions of confinement claim on qualified immunity grounds.

**B.     Fourth Amendment**

Plaintiff does not state the basis for his Fourth Amendment claim and the Court can discern no such basis. Accordingly, this claim should be dismissed.

**C.     Americans with Disabilities Act**

Plaintiff makes passing reference to the Americans with Disabilities Act ("ADA"). Title II of the ADA "prohibit[s] discrimination on the basis of disability." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002). Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. Title II of the ADA applies to inmates within state prisons. Pennsylvania Dept. of Corrections v. Yeskey, 118 S. Ct. 1952, 1955 (1998); see also Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th Cir. 1997); Duffy v. Riveland, 98 F.3d 447, 453-56 (9th Cir. 1996). The Court assumes that such protections extend also to civil detainees. "To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." Lovell, 303 F.3d at 1052.

The basis of Plaintiff's ADA claim is not entirely clear. He alleges that the ADA was violated when he was housed in an area where Valley Fever was prevalent, preventing him from participating in normal, everyday activities outside. These vague allegations are not sufficient to state a claim under the ADA. Plaintiff has not alleged that he is a qualified individual with a disability under the ADA, or that he was improperly excluded from participation in, and denied the benefits of, an institutional service, program, or activity on the basis of his physical handicap. Therefore, Plaintiff fails to state a claim under the ADA.

**D.   State Law**

Plaintiff alleges several claims that are based on provisions of state law. As Plaintiff has failed to allege a cognizable federal claim, the Court does not have jurisdiction over his claims arising under state law. See 28 U.S.C. § 1367.

The Court also notes that Plaintiff has not pled compliance with the California Tort Claims Act, which requires filing a claim with the California Victim's Compensation Government Claim Board prior to filing a lawsuit against a state employee or entity. Cal. Gov. Code §§ 905.2, 911.2, 945.4, 950.2; Munoz v. California, 33 Cal. App. 4th 1767, 1776 (1995). Timely claim presentation is not merely a procedural requirement but "a condition precedent to plaintiff's maintaining an action against [a state employee or entity] defendant." California v. Super. Ct. (Bodde), 32 Cal. 4th 1234, 1240 (2004). Failure to file a timely claim with the VCGCB is fatal to a cause of action for negligence or other state tort. See Hacienda La Puente Unified Sch. Dist. of Los Angeles v. Honig, 976 F.2d 487, 495 (9th Cir. 1992) (citing City of San Jose v.Super. Ct. (Lands Unlimited), 12 Cal. 3d 447, 454 (1974)).

Plaintiff's state law claims should be dismissed.

**V.   Conclusion and Recommendation**

Plaintiff's first amended complaint does not state a cognizable claim for relief. He previously was advised of pleading deficiencies and afforded the opportunity to correct them. He failed to do so. Any further leave to amend reasonably appears futile and should be denied. Accordingly, the undersigned HEREBY RECOMMENDS that the action be DISMISSED with prejudice.

The findings and recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with the findings and recommendation, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." A party may respond

to another party's objections by filing a response within fourteen (14) days after being served with a copy of that party's objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   August 23, 2016                    /s/ *Michael J. Seng*
                                            UNITED STATES MAGISTRATE JUDGE